UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| AMANDALYNN R.,<br><br>        Plaintiff<br><br>v.<br><br>KILOLO KIJAKAZI,<br>Acting Commissioner of Social Security,[1]<br><br>        Defendant | No. 1:20-cv-00408-JDL |

### REPORT AND RECOMMENDED DECISION[2]

This Social Security Disability (SSD) and Supplemental Security Income (SSI) appeal raises the question of whether the administrative law judge (ALJ) supportably found the plaintiff capable of performing work existing in significant numbers in the national economy. Among other things, the plaintiff contends that the ALJ erred in failing to resolve a conflict between her intelligence testing scores and the aptitudes required for the jobs that the ALJ relied upon in finding her not disabled. *See* Plaintiff's Itemized Statement of Errors ("Statement of Errors") (ECF No. 13) at 9-15. I agree and, accordingly, recommend that the court vacate the commissioner's decision and remand this case for further proceedings consistent herewith. I need not and do not reach the plaintiff's remaining points of error.

Pursuant to the commissioner's sequential evaluation process, 20 C.F.R. §§ 404.1520, 416.920; *Goodermote v. Sec'y of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), the ALJ

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), Kilolo Kijakazi is substituted as the defendant in this matter.
[2] This action is properly brought under 42 U.S.C. §§ 405(g) and 1383(c)(3). The commissioner has admitted that the plaintiff has exhausted her administrative remedies. The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2), which requires the plaintiff to file an itemized statement of the specific errors upon which she seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office, and the commissioner to file a written opposition to the itemized statement. Oral argument was held before me pursuant to Local Rule 16.3(a)(2)(D), requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority, and page references to the administrative record.

1

found, in relevant part, that the plaintiff met the insured status requirements of the Social Security Act through December 31, 2021, Finding 1, Record at 19; that she had the severe impairments of post-traumatic stress disorder (PTSD), adjustment disorder, rule-out learning disorder, gastroesophageal reflux disease (GERD), and fibromyalgia, Finding 4, *id*.; that she had the residual functional capacity (RFC) to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), except that she could perform simple, routine, repetitive tasks, with no detailed instructions, had to work in a low-stress environment, defined as involving only occasional decision-making and occasional changes in the work setting, and could have occasional interaction with co-workers and the public, Finding 6, *id*. at 22; that, considering her age (23 years old, defined as a younger individual, on her alleged disability onset date, December 6, 2016), education (at least high school), work experience (transferability of skills immaterial), and RFC, there were jobs existing in significant numbers in the national economy that she could perform, Findings 8-11, *id*. at 27; and that she, therefore, had not been disabled from December 6, 2016, her alleged disability onset date, through the date of the decision, November 22, 2019, Finding 12, *id*. at 29. The Appeals Council declined to review the decision, *id*. at 1-3, making the decision the final determination of the commissioner, 20 C.F.R. §§ 404.981, 416.1481; *Dupuis v. Sec'y of Health & Human Servs.*, 869 F.2d 622, 623 (1st Cir. 1989).

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence. 42 U.S.C. §§ 405(g), 1383(c)(3); *Manso-Pizarro v. Sec'y of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996). In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support the conclusion drawn. *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Sec'y of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

The ALJ reached Step 5 of the sequential evaluation process, at which stage the burden of proof shifts to the commissioner to show that a claimant can perform work other than any past relevant work. 20 C.F.R. §§ 404.1520(g), 416.920(g); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Goodermote*, 690 F.2d at 7. The record must contain substantial evidence in support of the commissioner's findings regarding the plaintiff's RFC to perform such other work. *Rosado v. Sec'y of Health & Human Servs.*, 807 F.2d 292, 294 (1st Cir. 1986).

## I. Discussion

### A. Background

The first administrative hearing in this case took place in November 2018. *See* Record at 69. During that hearing, vocational expert (VE) Elaine Cogliano testified that an individual with the plaintiff's RFC[3] could perform the jobs of bagger, inspector[4], and mail sorter. *See id.* at 108-10; *Dictionary of Occupational Titles* (U.S. Dep't of Labor, 4th ed. rev. 1991) (*DOT*) §§ 209.687-026, 716.687-014, 920.687-018. At the conclusion of the hearing, the ALJ granted the plaintiff's request to undergo a neuropsychological evaluation. *See* Record at 16.

Consistent with the ALJ's order, Susanne Stiefel, Ph.D., conducted a psychological evaluation of the plaintiff in January 2019. *See* Record at 515-21. Dr. Stiefel's testing indicated that the plaintiff had a Full Scale IQ score of 79 ("in the borderline range"), a Verbal Comprehension Index score of 78 ("above only 7% of her peers and in the borderline range"), a Perceptual Reasoning Index score of 96 ("in the average range and above those of 39% of her peers"), a Working Memory Index score of 74 ("in the borderline range and better than only 4%

---

[3] As the plaintiff notes, *see* Statement of Errors at 7 n.4, the ALJ included certain postural limitations in his hypothetical question to VE Cogliano that he did not include in his written RFC determination, *compare* Finding 6, Record at 22 with *id*. at 108-09. Nothing turns on this discrepancy because the RFC presented to VE Cogliano was more restrictive than the one ultimately adopted by the ALJ.
[4] The *DOT* refers to the job of inspector as glass checker. *See DOT* § 716.687-014.

of her peers"), and a Processing Speed Index score of 81 ("in the low average range and better than 10% of her peers"). *Id.* at 518-19.[5]

Ultimately, Dr. Stiefel diagnosed the plaintiff with PTSD with panic attacks, adjustment disorder with mixed anxiety and depression, and rule-out learning disability. *See id.* at 521. She went on to assess the plaintiff's work-related abilities as follows:

> The [plaintiff] can follow work rules provided they were presented to her at her level of comprehension and/or reading ability. She currently is struggling and thinks that she has processing problems. She has some hearing loss or hearing difficulty. She would need a further assessment in this area.[6] She does have some anxiety especially around working with clients who are either violent or pose some difficulties that she is unprepared for. However, she has been able to generally work without severe difficulty with coworkers and deal with the public or interact with supervisors. Currently she is struggling because she is trying to complete a report on a client and has had difficulty with comprehension and she says this an ongoing problem with which she struggles. She could use adequate judgment on a job with which she is familiar. She would have difficulty dealing with work stressors and keeping up attention and concentration on the job. She also suffers from [PTSD] symptoms, and when she has flashbacks or gets triggered she has quit at least one job. Overall she has been able to function independently though. More recently she has needed assistance with report writing because of her difficulty in understanding and being able to perform to complete those reports.
>
> In general she can understand, remember, and carry out simple job instructions. She tests in the average range in her perceptual reasoning abilities . . . but in the borderline range in her verbal comprehension reasoning abilities. Her working memory is also in the borderline range and her processing speed is in the low average range. She would need further assessment to determine whether she could handle added complexity or even to understand her current difficulties, and whether they are related to a learning disability and hearing loss or a combination of both.
>
> She can maintain a good personal appearance and generally demonstrates reliability. Overall she has been able to behave in an emotionally stable manner and relate predictably in social situations, except for instances when she has a flashback or is triggered by something in her work environment and then her [PTSD] symptoms have been problematic.

---

[5] The plaintiff provided post-hearing evidence that an IQ score of 79 places her in the eighth percentile. *See* Record at 383; Statement of Errors at 11. The commissioner does not challenge that evidence and, in fact, acknowledged at oral argument that the plaintiff's IQ score and verbal comprehension score were both in the bottom 10th percentile.
[6] As the commissioner notes, *see* Defendant's Opposition to Plaintiff's Itemized Statement of Errors ("Opposition") (ECF No. 15) at 10 n.4, the ALJ found that the plaintiff's alleged hearing deficit was not a medically determinable impairment, *see* Record at 20. The plaintiff does not challenge that finding.

*Id.* at 520-21.

After receiving Dr. Stiefel's report, the plaintiff requested a supplemental hearing, which was held in August 2019. *Id.* at 16, 38, 366. At the hearing, counsel for the plaintiff asked the testifying VE, Ruth Baruch, about the aptitudes required for the three jobs previously identified by VE Cogliano. *Id.* at 61-62. VE Baruch testified that the bagger job required Level 4 aptitudes in General Learning Ability and Verbal Aptitude, which encompass people in the bottom third of the population exclusive of those in the bottom 10 percent. *Id.* at 61-62.[7] Counsel for the plaintiff then had the following exchange with VE Baruch:

> [Counsel:] So, could an individual who has a rank of 5 and, thus, be in the lowest tenth percentile for general learning ability or verbal ability perform any of the three jobs that I provided you?
>
> [VE Baruch:] I would probably say no to that, because then they probably wouldn't even be able to have any conversation. So, you know, they wouldn't be able to converse. They'd be pretty limited.
>
> [Counsel:] Well – or – if they did perform such a job as this, would it be fair to say that such an individual would probably require a workplace accommodation of sorts, a job coach or something like that?
>
> [VE Baruch:] Yeah, they would probably need a supportive work environment. Yeah.

*Id.* at 63. The ALJ did not ask VE Baruch any additional questions on these points after the plaintiff's counsel finished cross-examination. *See id.* at 63-67.

---

[7] The aptitude levels in the *DOT* are as follows: Level 1 (the top 10 percent of the population), Level 2 (the highest third of the population exclusive of the top 10 percent), Level 3 (the middle third of the population), Level 4 (the lowest third of the population exclusive of the bottom 10 percent), and Level 5 (the lowest 10 percent of the population). *See* Record at 376-77, 379 (copies of U.S. Dep't of Labor, *The Revised Handbook for Analyzing Jobs* at i, 9-2 (1991)). Although VE Baruch did not specifically testify as to the General Learning Ability and Verbal Aptitude levels listed in the *DOT* for the other two jobs at issue, the parties agree that the job of inspector is rated Level 4 in both categories and the job of mail sorter is rated Level 3 in both categories. *See* Statement of Errors at 12 n.5; Opposition at 11 n.5; *DOT* §§ 209.687-026, 716.687-014.

In his written decision following the hearing, the ALJ "afforded great weight" to Dr. Stiefel's opinion and incorporated her functional assessment into his RFC determination. *Id.* at 25. He went on to reject the plaintiff's post-hearing assertion that VE Baruch's testimony established that the plaintiff was unable to perform the three jobs identified by VE Cogliano, *see id.* at 374-75, explaining,

> The [plaintiff]'s representative asked Ms. Baruch if someone in the bottom 10% of verbal functioning could perform the jobs provided, and Ms. Baruch said no, the jobs could not be performed. The [plaintiff]'s representative asserts this testimony precludes the [plaintiff] from performing the jobs provided because the [plaintiff] scored at a 7% level in the verbal comprehension index, based on the . . . testing performed by Dr. Stiefel.
>
> The [plaintiff]'s representative's assertion is not accepted. First, it fails to address that Ms. Baruch qualified her response by stating that, in her opinion, someone in the bottom 10% of verbal functioning would be unable to communicate verbally. As such, the undersigned finds if an individual were unable to communicate verbally the jobs provided would be precluded. However, that is not supported by or consistent with the [plaintiff]'s presentation at hearing, multiple medical care providers of record or specifically to Dr. Stiefel. This is also why no communication deficits have been identified in the above [RFC]. Secondly, the [plaintiff]'s representative relied on verbal testing performed by Dr. Stiefel to assert the jobs provided were precluded. However, he failed to also consider that Dr. Stiefel opined the [plaintiff] was only **moderately** limited in understanding, remembering and carrying out **complex** information, and **mildly** limited in this regard with respect to understanding, remembering and carrying out **simple** tasks.
>
> Overall, Dr. Stiefel, based on her examination and testing, found the [plaintiff] no more than moderately limited in her functioning, the [RFC] is consistent with the overall findings of Dr. Stiefel, and based on the testimony of the [VEs], the jobs identified are capable of being performed by someone with those limitations.

*Id.* at 28-29 (citations omitted). The ALJ went on to rely on the three jobs identified by VE Cogliano when finding the plaintiff not disabled at Step 5. *See id.* at 27-29.

### B. Analysis

The plaintiff argues that the ALJ erred in "dismissing" VE Baruch's "expert testimony about the vocational implications of the [intelligence testing] scores reported by Dr. Stiefel" and

6

failed in his duty to reconcile the discrepancy between those test scores and the aptitudes listed in the *DOT* for the jobs at issue.  Statement of Errors at 11-15; *see also Jenkins v. Colvin*, Civil No. 1:14-cv-285-DBH, 2015 WL 5093290, at *2-3 (D. Me. Aug. 28, 2015) (remanding when ALJ erroneously rejected VE's testimony that IQ test scores in bottom 10 percent of the population would eliminate all work on the bases that the testimony was vague and beyond VE's expertise and failed to obtain clarification from VE about availability of jobs for claimant); *Gurney v. Soc. Sec. Admin. Comm'r*, 880 F. Supp. 2d 174, 178-79 (D. Me. 2012) (remanding when ALJ failed to resolve a discrepancy between claimant's IQ scores, which placed her in the bottom 10 percent of the population, and the *DOT* definition of the jobs at issue, which indicated that individuals in the bottom 10 percent lacked the general learning ability and verbal aptitude to perform those jobs).

The commissioner, on the other hand, argues that because VE Baruch "testified only that an individual with Plaintiff's IQ scores and corresponding aptitudes would be unable to have a conversation and therefore could not perform the three jobs" at issue, it was reasonable for the ALJ to reject that testimony on the basis that the plaintiff "was *not* an individual who was unable to have a conversation."  Opposition at 13, 15.  She argues that in finding VE Baruch's testimony inapplicable, the ALJ "resolved the seeming conflict" between that testimony and VE Cogliano's testimony identifying the jobs at issue and "nullified the need" for any further clarification. *Id.* at 13-15.

The plaintiff has the better argument.

Contrary to the commissioner's argument, VE Baruch did not testify only that a person with the plaintiff's tests scores and corresponding aptitudes would be unable to perform the jobs at issue because that person would be unable have a conversation, nor was that the underlying premise of her entire testimony.  VE Baruch also testified that Level 4 aptitudes in the *DOT* refer

7

to individuals between the 10th and 33rd percentiles and that the job of bagger required Level 4 aptitudes in General Learning Ability and Verbal Aptitude. *See* Record at 61-62. She further testified that an individual with Level 5 aptitudes in General Learning Ability and Verbal Aptitude – *i.e.*, an individual in the lowest 10 percent of the population – would probably need an accommodation to perform the jobs at issue, and, in that context, did not refer to her prior testimony that such a person would be unable to converse. *See id.* at 62-63.[8] Thus, although the ALJ may have been justified in finding *some* of VE Baruch's testimony inapplicable to the plaintiff on the basis that the plaintiff was able to converse, I am not persuaded that this "nullified the need" for the ALJ to obtain further clarification from VE Baruch concerning how the plaintiff's test scores and corresponding aptitudes would affect her ability to perform the jobs identified by VE Cogliano. *Cf. Jenkins*, 2015 WL 5093290, at *3 (remanding when an ALJ failed "to obtain clarification from the [VE] about the availability of jobs for [the] claimant" after the VE testified "on cross-examination that no jobs would be available to someone with" the claimant's IQ scores and aptitudes); *Rebecca B. v. Saul*, No. 2:20-cv-00154-JDL, 2021 WL 1565402, at *3-4 (D. Me. Apr. 21, 2021) (rec. dec., *aff'd* May 18, 2021) (remanding when, among other things, a VE testified that a claimant exceeded the weight limit of standard office chairs and the ALJ failed to "inquire whether and to what extent" that fact would "impact the number of jobs available" to the claimant).[9]

---

[8] For that reason, I disagree with the commissioner's suggestion that VE Baruch's testimony on this point was tied to her testimony that such an individual "wouldn't even be able to have any conversation." Opposition at 14 & n.8 (quoting Record at 63). Furthermore, even if the basis of VE Baruch's testimony on this point is unclear, the ALJ should have asked a clarifying question. *Cf. Jenkins*, 2015 WL 5093290, at *2 (noting that if an ALJ had a problem with the phrasing of a lawyer's question to a VE, the ALJ "should have asked a clarifying question to ascertain" what the VE really meant in response to the question).

[9] I am also unpersuaded by the commissioner's additional argument that VE Baruch's comment regarding the ability to converse calls into question whether a VE is qualified to opine on the vocational significance of a claimant's IQ scores. *See* Opposition at 9, 12-13. Although the commissioner is right that a VE cannot testify "whether [a] claimant actually exhibit[s] any particular characteristic[,]" *id.* at 12 (quoting *Jenkins*, 2015 WL 5093290, at *2), this court has

Moreover, where the plaintiff raised the issue of the discrepancy between her test scores and the aptitudes listed in the *DOT* descriptions of the jobs identified by VE Cogliano, the ALJ had a duty to resolve the discrepancy independent from his consideration of VE Baruch's testimony. *See Gurney*, 880 F. Supp. 2d at 178-79 (holding that ALJ was obligated to resolve "the discrepancy between the DOT's description of the aptitudes required to perform the four jobs supplied by [the VE] and the [claimant]'s intelligence testing scores, which indicated that she could perform none of those jobs"); SSR 00-4p, 2000 WL 1898704 (Dec. 4, 2000) (providing that, "[w]hen there is an apparent unresolved conflict" between vocational evidence and the *DOT*, an ALJ must resolve the conflict before relying on the vocational evidence to support a determination whether a claimant is disabled). Indeed, the ALJ's discounting of VE Baruch's testimony does not change the fact that the plaintiff's IQ score and Verbal Comprehension Index score place her in the bottom 10 percent of the population, which seemingly is inconsistent with the General Learning Ability and Verbal Aptitude levels listed in the *DOT* for the jobs identified by VE Cogliano and relied upon by the ALJ. *See* Record at 28-29, 108-09; *DOT* §§ 209.687-026, 716.687-014, 920.687-018; *Gurney*, 880 F. Supp. 2d at 177-79.[10]

To the extent that the commissioner argues that the ALJ resolved this discrepancy by concluding that Dr. Stiefel's RFC findings (which formed the basis of his mental RFC

---

consistently held that a VE is qualified to give "an opinion about whether there [are] available jobs in the national economy for" an individual with a specific IQ. *Jenkins*, 2015 WL 5093290, at *2; *see also Gurney*, 880 F. Supp. 2d at 178 (observing that a VE testifying as to whether a person with specific IQ scores can perform certain jobs "is no different than" a VE "testifying that a person limited to simple tasks can or cannot perform certain jobs"). Moreover, this case does not present an opportunity to revisit this issue because the ALJ did not reject VE Baruch's testimony on the basis of her qualifications. *See* Record at 28-29.

[10] The commissioner asserts in passing that intelligence testing scores should not be equated with the aptitude levels in the *DOT,* a proposition for which she cites caselaw from other circuits. *See* Opposition at 13 n.6. Nevertheless, she acknowledges that "the ALJ did not address this issue, there is also contrary caselaw," and this court "has previously declined to resolve this issue in the first instance[.]" *Id.* (citations omitted); *see also, e.g.*, *Gwendolyn L. v. Berryhill*, No. 1:18-cv-00272-JDL, 2019 WL 2435673, at *5 (D. Me. June 11, 2019) (rec. dec., *aff'd* Sept. 4, 2019) ("The commissioner cites no case law of the Supreme Court, the First Circuit, or this court holding that, as a matter of law, IQ scores cannot serve as proxies for aptitudes. Thus, it cannot fairly be said that, following remand in this case, there could be only one conclusion on this point as a matter of law." (citation and footnote omitted)).

determination) adequately accounted for the plaintiff's intelligence scores because Dr. Stiefel was the one assessed those scores, *see* Opposition at 14-15 & n.8, this court has rejected that argument, *see, e.g., Gurney*, 880 F. Supp. 2d at 178-79 ("Regardless of whether [the medical expert] and the [ALJ] meant to subsume the plaintiff's IQ scores in their RFC findings, the DOT indicated that a person with such scores, which the [ALJ] evidently accepted as valid, could not perform the jobs at issue.  The plaintiff's counsel called this discrepancy to both [the VE's] and the [ALJ's] attention, and it required resolution." (citations omitted)); *Jenkins*, 2015 WL 5093290, at *2 ("The ALJ reasoned that her own [RFC] findings, as stated initially in her questions to the [VE], trumped the expert's later answers on cross-examination about the effects of IQ or general learning ability on job availability.  For that conclusion the ALJ needed the expert's testimony, and she did not pose the necessary question to obtain it." (citation omitted)); *Christin M. v. Saul*, No. 2:20-cv-00179-JAW, 2021 WL 1614324, at *6 (D. Me. Apr. 25, 2021) (rec. dec., *aff'd* May 11, 2021) ("[The ALJ] never clarified whether the [claimant] could perform the jobs identified if the VE assumed both the ALJ's hypothetical RFC *and* the fact that the [claimant] possessed a verbal aptitude score in the bottom 10 percent.").

At bottom, the ALJ's failure to obtain clarity as to the vocational impact of the plaintiff's intelligence testing scores or otherwise resolve the discrepancy between those scores and the aptitudes listed in the *DOT* for the jobs he relied upon at Step 5 leaves his decision unsupported by substantial evidence.  *See Jenkins*, 2015 WL 5093290, at *3; *Gurney*, 880 F. Supp. 2d at 178-79.  Reversal and remand are therefore warranted.

## II. Conclusion

For the foregoing reasons, I recommend that the commissioner's decision be **VACATED** and the case **REMANDED** for proceedings consistent herewith.

## *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum and request for oral argument before the district judge, if any is sought, within fourteen (14) days after being served with a copy thereof.   A responsive memorandum and any request for oral argument before the district judge shall be filed within fourteen (14) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

Dated this 10th day of November, 2021.

/s/ John H. Rich III
John H. Rich III
United States Magistrate Judge